SHOEMAKER, et al., Appellees,

v.

WHITT et al., Appellants.

[Cite as *Shoemaker v. Whitt* (1998), 129 Ohio App.3d 591.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 97CA104.

Decided Aug. 28, 1998.

Jerry W. Shoemaker and Rena Shoemaker, pro se.

Michael Whitt and Angelina Collins, pro se.

GRADY, Judge.

This is an appeal from a judgment in the amount of $3,000 for unpaid rent.

On March 3, 1997, Michael Whitt and Angelina Collins signed a written lease for the premises at 1669 Sunnymeade Road, Xenia, agreeing to pay rent at the rate of $1,200 per month to the landlords, Jerry and Rena Shoemaker. The term of the lease commenced on April 1, 1997, and was for an initial term of two months. The tenants were authorized to terminate the lease on sixty days' written notice during the initial term. Otherwise, if they remained in possession they would be treated as holding over, and would owe rent for the entire period of their possession. The lease also prohibited abandonment of the premises by the tenants.

The premises at 1669 Sunnymeade Road included a house and two barns, in which the Shoemakers kept horses. Whitt and Collins intended to live in the house and to use the barns to store equipment they used in a lawn care business.

The tenants complained of problems with the condition of the property when they signed the lease. These included the cleanliness and condition of the house, items of "junk" located about the property, and a large pile of horse manure outside the house. The tenants also complained of cats in the barn and water damage from a leaking roof. The tenants also complained that the water from the well on the property was bad, and subsequently refused to move in or pay rent until the water problem was cured. The landlord made promises to attend to these problems, but cured none of these problems to the satisfaction of the tenants, who never moved in or paid rent.

The landlord commenced this action in small claims court for unpaid rent and costs associated with the tenants' alleged breach of the lease. The matter was heard, and a judgment for $3,000 was entered for the landlord. The tenants filed a timely notice of appeal.

The tenants, who appear *pro se*, have not set up specific assignments of error in their brief, as App.R. 16(A)(3) requires. Nevertheless, we conclude that the following are the errors they assign.

### First Assignment of Error

"The trial court erred in finding a breach of the lease agreement because the tenant was relieved of performing its duties under the lease by the Landlords and Tenants Act, R.C. Chapter 5321."

R.C. 5321.04(A) states:

"A landlord who is a party to a rental agreement shall do all of the following:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

"(3) Keep all common areas of the premises in a safe and sanitary condition;

"(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him[.]"

R.C. 5321.07 provides that a tenant may terminate a rental agreement if a landlord fails to remedy a condition prohibited by R.C. 5321.07, or if the tenant believes that the landlord has failed to remedy such a condition, within a reasonable time after the tenant serves written notice on the landlord specifying the acts or omissions that constitute the landlord's noncompliance. However, if the lease fails to contain the landlord's name and address, the written notice requirement is waived. R.C. 5321.18(B).

█ The written lease agreement between the Shoemakers and Whitt and Collins contains no information concerning the landlord's address. Therefore, per R.C. 5321.18(B), written notice of the acts or omissions that constitute the landlord's noncompliance with the requirements of R.C. 5321.04(A) was not a condition to the tenants' termination of the lease for one of those causes. However, oral notice of noncompliance and the tenant's election to terminate was yet required.

█ The Shoemakers' alleged failure to comply with the requirements of R.C. 5321.04 was not a defense on which Collins and Whitt relied at trial. Generally, an appellate court will not consider any error that a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when the error could have been avoided or corrected. *State v. Gordon* (1971), 28 Ohio St.2d 45, 57 O.O.2d 180, 276 N.E.2d 243. However, the appellate court may consider such an error when justice requires it and the evidentiary basis for the claim was before the trial court. *State v. Peagler* (1996), 76 Ohio St.3d 496, 668 N.E.2d 489.

█ The trial court confined its consideration of the claims and defenses to the written lease, the terms of which make no requirements concerning the condition of the property or the landlord's duty to improve it. Absent a claim of fraud, which not involved here, the court properly refused to consider evidence of the verbal dealings of these parties with respect to the landlord's promises to

clean up the property when determining the parties' obligations and duties under the written lease. Nevertheless, the provisions of the Landlords and Tenants Act are engrafted by the law onto their contract, and should be considered by the court when any of its causes are demonstrated by the evidence, notwithstanding a tenant's failure to plead them as defenses.

Collins and Whitt made two distinct claims with respect to the condition of the property that could demonstrate the Shoemakers' noncompliance with the requirements of R.C. 5321.04(A) and show a basis for the tenant's termination of the lease pursuant to R.C. 5321.07.

■ First, they claimed that the quality of the drinking water, which was supplied from a well, was unsafe. They offered evidence in the form of an opinion by Gary Stevenson, an employee of Culligan water service, who opined that the water was unsafe. However, Stevenson's opinion was not based on any test, but only on criteria in literature that his employer provided, which he determined from observation.

In opposition, the Shoemakers presented a report from the Greene County Combined Health District, which stated that a test of the well water revealed no coliform organisms present. Whitt argued that this could have been the result of a temporary bleach treatment, but there was no evidence of that.

The evidence concerning the condition of the well water is too inconclusive to support a finding that the landlord failed to comply with relevant health and safety codes or that the water was not safe and sanitary. Therefore, the quality of the water offered no basis to terminate the lease, notwithstanding the tenants' belief that it was bad.

■ Second, Collins and Whitt complained that the premises were in poor repair and generally unclean. Whitt testified that animals had been kept in the house, requiring extensive cleaning and painting to return it to a habitable condition. He said that the ceilings in the kitchen and dining rooms had suffered water damage after a storm blew shingles off the roof. Whitt testified that various items of "junk," such as five-gallon drums, were strewn about the yard. He also said that a pile of horse manure about three feet tall sat outside the house. Whitt also claimed that the floors of the two barns were covered in sand to a depth of six inches, and that the barns were infested by wild cats. Whitt also testified that after the lease was signed the Shoemakers removed a water softener, which made the quality of the well water poorer. He also testified that the rear door of the house had been kicked in.

Jerry Shoemaker conceded that the agreement was "hurried," but that the "ceilings were fixed and the carpet was cleaned." He stated that he had agreed to reimburse Whitt for removing the horse manure. He stated that Collins's father had agreed to paint the house, but never did. Collins contradicted Shoemaker's claim that the ceilings had been repaired, stating that he had asked her father only for an estimate to do the repair, three days before Collins and Whitt were to move in.

The evidence, particularly concerning the wild cats in the barns and the large pile of horse manure outside the house, demonstrates that the Shoemakers failed to keep the common areas of the premises in a safe and sanitary condition, in violation of R.C. 5321.04(A)(3). Further, the evidence demonstrates that the Shoemakers failed to make repairs and to do what was reasonably necessary to put and keep the premises in a fit and habitable condition, contrary to R.C. 5321.04(A)(2). It is undisputed that Whitt and Collins gave them notice of the acts and omissions that constituted noncompliance. Written notice was not required because of the defect in the lease concerning the landlords' address, per R.C. 5321.18(B).

The Shoemakers were anxious to rent their property, having purchased another home in which to live. Whitt and Collins, who were apparently inexperienced in these things, believed that the Shoemakers would keep their promises to repair and improve the premises, though the written lease did not require them to. Apparently relying on that "out," the Shoemakers did nothing, expecting their tenants to assume that burden. When they would not, the agreement fell apart.

We conclude that Whitt and Collins were authorized by R.C. 5321.07(B)(3) to terminate their lease agreement with the Shoemakers on April 1, 1997, the date that its term commenced. Therefore, the tenants are not liable for unpaid rent during the period until someone else leased the premises, which was the sole basis of the $3,000 judgment against them.

The first assignment of error is sustained.

### Second Assignment of Error

"The lease is unenforceable against the tenants because their intended commercial use of the property was prohibited by the applicable zoning codes."

The lease does not indicate what use the tenants intended to make of the property, so impossibility of performance, which may render a contract void, is not demonstrated. Further, the record does not demonstrate what the applicable

zoning codes are. Because the error assigned is not portrayed by the record, it cannot be determined by this court and must be rejected. App.R. 12(A)(1)(b).

The second assignment of error is overruled.

### Third Assignment of Error

"The lease is void because it fails to contain the landlord's address."

■ R.C. 5321.18(A) requires every written agreement for rental of residential premises to contain the name and address of the owner and the owner's agent, if any. However, the statute does not provide that the agreement is void or unenforceable if the agreement does not, but provides only that the tenant is then relieved of the requirement to provide written notices to the landlord concerning violations of the Landlords and Tenants Act. R.C. 5321.18(B). We addressed that requirement, and its implications here, in the first assignment of error.

The third assignment of error is overruled.

### Conclusion

Having sustained the first assignment of error, we reverse and vacate the judgment for plaintiffs–appellees, the Shoemakers, in the amount of $3,000 on their claim for relief, and enter judgment for defendants–appellants, Whitt and Collins, on that claim. Whitt and Collins also filed a counterclaim, on which the trial court rendered judgment for the Shoemakers, but that judgment is not before the court in this appeal.

*Judgment reversed.*

FREDERICK N. YOUNG, P.J., and CACIOPPO, J., concur.

MARY CACIOPPO, J., retired, of the Ninth District of Court of Appeals, sitting by assignment.